Vab" Voobhis, J.
Appellant has been convicted in the New York City Court of Special Sessions of causing the morals of a child under 16 years of age to become depraved in violation of subdivision 1 of section 483 of the Penal Law, and of assault in the third degree in violation of subdivision 1 of section- 244. Both of these misdemeanors are claimed to have been perpetrated on the daughter of appellant and his wife. Matrimonial differences had arisen which culminated in appellant’s removal from the home when his wife had him arrested following the alleged incident on which these criminal charges depend. The evidence against him consists of testimony by Nancy, their 10-year-old daughter, and an admission which his wife testified that he subsequently made to her on the telephone. We are satisfied that this conversation was erroneously admitted into evidence for reasons hereinafter stated.
The police were in the Oyóla home within four hours and Mrs. Oyóla was there within two hours of the earliest possible happening of this alleged sexual assault. The child testified to all the particulars of a completed act of intercourse upon her by her father, soon after she had retired for the night. She said that she had on her nightgown, and that he was clothed. In spite of the early arrival of both mother and the police, no evidence was offered by the People of any examination of the child’s body, nor the finding of any residual evidence of a *261 seminal emission in or about the child’s sex organs, adjacent area nor on any other portion of her body, bedclothes or nightgown nor upon appellant’s clothing or anywhere else. Ho evidence was introduced of any cutaneous, structural or tissue injury or disturbance of this girl’s private parts, such as abrasions, lacerations, discoloration, redness, swelling or the like. Ho circumstantial evidence supports the child’s version of what occurred, all of which appellant has denied. In answer to questions from the Presiding Judge at Special Sessions, Haney said that her mother had rehearsed her story privately with her five times before the daughter told it to anyone else. Appellant had no previous criminal record. His good character was attested by his employer and another witness, and was recognized by Special Sessions when he was sentenced to an indefinite term in the Hew York City Penitentiary. Haney testified that he had done the same thing to her and to her playmate each on one prior occasion, but that this was the first time when she told her mother. This disclosure coincided in time with her mother’s lawyer’s instruction to Haney to remember that she would have to repeat the same testimony in a matrimonial action against her father.
The question is whether this evidence against appellant was sufficient to prove him guilty beyond a reasonable doubt. In People v. Ledwon (153 N. Y. 10) it was held that the burden being upon the People of establishing the guilt of the accused beyond a reasonable doubt, a mere scintilla or even some proof is not enough to create an issue of fact. In the exercise of their judicial function, courts have often held that in certain situations as matter of law the evidence must be more than usually clear and convincing. The degree of proof required may be affected by whether the testimony is contradicted by other evidence, whether it is consistent, credible or contains elements of suspicion. Moreover all evidence is to be weighed according to the proof which it was in the power of the party to have produced, as Lord Mansfield observed (2 Wigmore, Evidence, § 285, p. 163). Upon the record in this case including the omission of any circumstantial evidence lending credibility to the testimony of this child, we have concluded that appellant has not been proved guilty beyond a reasonable doubt.
*262 Our attention has been directed to the circumstance that in the instance of this and certain other sexual offenses no statute specifically requires corroboration of the testimony of the complainant, like the statutes in the cases of abduction (Penal Law, § 71), adultery (id., § 103), compulsory prostitution (id., §§ 1091, 2460), compulsory marriage (id., § 1455), rape (id., §2013), and, until the crime was abolished, seduction under promise of marriage (id., § 2177). It is not altogether clear on what principle the Legislature adopted separate statutes in regard to these crimes. If appellant had been indicted under section 483-a of the Penal Law (carnal abuse of a child) he would have been charged with a felony punishable on conviction by imprisonment for not more than 10 years. That is exactly the same punishment prescribed for rape in the second degree (Penal Law, § 2010), yet in the latter instance there is a statute expressly requiring corroboration of the testimony of the complainant (§ 2013) whereas in case of the former there is no such statute. The absence of legislation requiring other evidence to support the testimony of the complainant extending to every material fact essential to constitute the crime, as in ease of rape (People v. Downs, 236 N. Y. 306; People v. Page, 162 N. Y. 272, 274), does not signify that courts fail to scrutinize with special care the same type of testimony in view of the ease with which crimes of this nature are charged and the difficulty of disproving them, and in view of the instinctive horror with which they are regarded by mankind (People v. Friedman, 139 App. Div. 795; People v. Donohue, 114 App. Div. 830).
Attention is called to the provision in section 392 of the Code of Criminal Procedure that when in criminal proceedings a child under 12 years of age does not in the opinion of the court or magistrate understand the nature of an oath, the unsworn statement of the child may be received “ But no person shall be held or convicted of an offense upon such testimony unsupported by other evidence.” Corroboration would have been required of every material fact essential to constitute the crime if Nancy Oyóla had not been sworn (People v. Meeks, 283 N. Y. 694; People v. Dutton, 305 N. Y. 632). In a series of decisions, however, where the infant complainant was sworn, this court has reversed convictions on charges of this nature and dismissed the indictments or informations as not proved beyond a reason *263 able doubt on the records before the court, which depended upon the testimony of the complaining Avitness alone (People v. Churgin, 261 N. Y. 661 [9 years old]; People v. Slaughter, 278 N. Y. 479 [15 years old]; People v. Derner, 288 N. Y. 599 [10 years old and 12 years old]; People v. Rosen, 293 N. Y. 683 [8 years old]; People v. Meyers, 309 N. Y. 837 [9 years old]). A child under 12 years of age is presumed to be incompetent to be sworn as a -witness in a criminal trial, and this presumption must be overcome by proper preliminary examination (People v. Klein, 266 N. Y. 188). Olshansky v. Prensky (185 App. Div. 469) indicates the nature of such preliminary examination. The records of the preliminary examinations in the cases cited lead to the conclusion that the application of this test is necessarily superficial and inconclusive in most instances. Some children were sworn who were younger than in other cases where unsworn statements were taken. The difficulty in applying the test of the understanding of an oath is illustrated by the preliminary examination of the 10-year-old girl upon whose testimony appellant’s fate depends, in which she repeated five times to the Presiding Judge of Special Sessions that she had never told a lie, but added, on reconsideration, that she had lied about 20 times during the previous year. She stated that she believed that, although one may sin by lying, nobody can do anything to you if you do lie. Can it be, in cases of this nature, that the need to have some verification of the testimony of the child depends altogether upon such collateral factors as whether, for example, this child had said in her preliminary examination that she had told 30 lies instead of 20 lies during the year before, or to whom she told the lies, or when she stopped lying? Mention of this is not frivolous, since this is the kind of thing in preliminary examinations of children under section 392 of the Code of Criminal Procedure which would determine the guilt or innocence of defendants unless the courts required some objective earmarks of truth even in eases where the child Avitness has been sworn. Where the -witness has been sworn, it may not be necessary to have supporting evidence of every material fact essential to constitute the crime, but the courts are not automatons of the Legislature to such a degree as to make patchwork of the law by being obliged to require full corroboration in instances where the trial court has taken the unsworn state *264 ment of the witness, but at the same time being compelled to dispense with all objective verification where an oath has been administered. To draw this sharp distinction would be as unreal today as the older law preventing atheists from testifying in court on the basis that they do not appreciate the nature of an oath (Jackson ex dem. Tuttle v. Gridley, 18 Johns. 98, 104). This can hardly have been intended by the Legislature. Whether a child eight years old is sworn as in People v. Rosen (supra) or a child of nine years has an unsworn statement taken as in People v. Dutton (supra) is largely fortuitous. Causing the criminal liability of a defendant to depend entirely upon this collateral and largely accidental circumstance would have almost as little to do with deliberative justice as trial by ordeal where, under a practice now happily extinct, the guilt or innocence of a defendant was determined by whether his hand was burned when he thrust it into boiling water or fire.
It is said that the acts charged against this appellant are usually performed in secret, out of the view of corroborating witnesses. That does not signify that some circumstantial evidence cannot be obtained lending veracity to the complainant’s narrative where the charge is true. Moreover, the same criticism would be applicable to the other sexual offenses to which reference has been made where specific statutes require corroborative evidence. Our liberties are based upon the idea that it is better for some of the guilty to go free than for any who are innocent to be convicted. In the extensive discussion of this subject by Professor Wigmore, to which the dissenting opinion in People v. Porcaro (6 N Y 2d 248, 253) refers, it is recognized that the general rule is to require corroboration of charges of all offenses against the chastity of women (Vol. Ill, p. 467; Vol. VII, p. 342 et seq.). His recommendation of changes in the law relate to the extension of existing rules to require in addition the psychiatric examination of complaining witnesses. It is noteworthy that a recommendation of such examinations was contained in the 1937-1938 Report of the American Bar Association’s Committee on the Improvement of the Law of Evidence (3 Wigmore, Evidence, p. 466), and that out of the fullness of his experience Professor Wigmore distrusted testimony by complainants in these cases advising the retention of whatever rules of corroboration exist under statute or case *265 law, and reminded the bench and bar that errant young girls and women are given to “ contriving false charges of sexual offenses by men” (p. 459) concerning which he observed (p. 460) that “It is time that the Courts awakened to the sinister possibilities of injustice that lurk in believing such a witness without careful psychiatric scrutiny.” Psychiatric scrutiny goes beyond anything at issue on this appeal. The subject is mentioned only on account of the attention which has been given to it in the dissenting opinion in People v. Porcaro (supra), decided herewith.
The alleged admission against interest which appellant’s wife testified that he made to her consisted in a telephone call to her about two weeks after she had brought about his arrest, during which interval they had been separated. She testified that he said over the telephone “ that it was true what he done ” and that £ £ he was sorry for what he did to his daughter, and then I told him that I couldn’t forgive him for what he had done to her ” and “ that he violated his rights as a father, and then he told me about this other woman that he had. ’ ’ If this statement, which appellant denied having made, could amount to an admission of a sexual assault upon his daughter, which is not altogether clear, we consider that the objection to its introduction into evidence should have been sustained on the ground that it was a confidential communication between husband and wife induced by the marriage relation. It is true that they had been living separately for a short time after appellant’s arrest, but the circumstances indicate that (if spoken at all) this statement was part of an attempted reconciliation between husband and wife (People v. Daghita, 299 N. Y. 194,198-199; Warner v. Press Pub. Co., 132 N. Y. 181,185-186; Parkhurst v. Berdell, 110 N. Y. 386, 393). The presumption of confidentiality has not been rebutted as was held in Poppe v. Poppe (3 N Y 2d 312). The Appellate Division held that this conversation was erroneously admitted.
The conviction appealed from should be reversed upon the ground that appellant has not been proved guilty of the offenses charged beyond a reasonable doubt.